# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| SUSAN JOHNSON, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>v.<br><br>HALSTED FINANCIAL SERVICES LLC and LVNV FUNDING LLC,<br><br>    Defendants. | Case No.: 18-cv-838<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Susan Johnson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

5. Defendant Halsted Financial Services, LLC ("HFS") is a debt collection agency with its principal offices located at 8001 North Lincoln Avenue, Suite 500, Skokie, Illinois 60077.

6. HFS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. HFS is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

8. HFS is a debt collector as defined in 15 U.S.C. § 1692a.

9. Defendant LVNV Funding, LLC ("LVNV") is a foreign limited liability company and debt collection agency with its principal place of business located at 15 South Main Street, Greenville, South Carolina 29601.

10. LVNV is engaged in the business of collecting debts, originally owed to others and acquired after default, which were incurred for personal, family or household purposes.

11. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

12. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see, e.g., Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 189994, at *24-30 (M.D. Pa. Nov. 16, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697, at *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector

2

if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'"); *Chenault v. Credit Corp Sols.*, 2017 U.S. Dist. LEXIS 197747, at *4-6 (E.D. Pa. Dec. 1, 2017); *Kurtzman v. Nationstar Mortg. LLC*, No. 16 17236, 2017 U.S. App. LEXIS 19750, at *6-7 (11th Cir. Oct. 10, 2017); *Skinner v. LVNV Funding LLC*, 2018 U.S. Dist. LEXIS 2812, at *7-8 (N.D. Ill. Jan 8, 2018); *Mitchell v. LVNV Funding LLC*, 2017 U.S. Dist. LEXIS 206440, at *7-12 (N.D. Ind. Dec. 15, 2017); *McMahon v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 41984, at *32-38 (N.D. Ill. Mar. 14, 2018); *Torres v. LVNV Funding, LLC*, 2018 U.S. Dist. LEXIS 49885, at *12-15 (Mar. 27, 2018).

13. The primary purpose of LVNV's business, and LVNV's principal purpose, is the collection of consumer debts. *See, eg. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and that '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (citing Pl.'s Reply Br.)).

14. In *Mitchell* and *McMahon*, the Northern District of Indiana and the Northern District of Illinois, respectively, denied the plaintiffs' and LVNV's cross motions for summary judgment on the issue of whether LVNV was a debt collector, as defined in the FDCPA, holding that determination of LVNV's principal purpose is a factual issue that must be left for the jury. *Mitchell*, 2017 U.S. Dist. LEXIS 206440, at *19; *McMahon*, 2018 U.S. Dist. LEXIS 41984, at *32-38.

15. In *Torres*, the Northern District of Illinois granted the plaintiff's motion for summary judgment on the issue of whether LVNV was a debt collector, as defined in the FDCPA, holding that LVNV was a debt collector because its only business purpose is to purchase debts and the collect them, it holds an Illinois collection agency license, it pursued

3

Case 2:18-cv-00838-NJ   Filed 06/01/18   Page 3 of 19   Document 1

collection of the outstanding debt by having its "master servicing agent" place the account with servicers, and its own deposition witness admitted that the only service LVNV provides is as a debt owner. *Torres*, 2018 U.S. Dist. LEXIS 49885, at *14-15.

16. LVNV's website states:

> LVNV Funding LLC, ("LVNV") purchases portfolios of both domestic (U.S.) and international consumer debt owned by credit grantors including banks and finance companies, and by other debt buyers. As the new owner of any debt previously owned by another creditor, LVNV's name may appear on a customer's credit report or in a letter from a collection agency.

http://www.lvnvfunding.com/ (accessed March 15, 2018).

17. In addition to telephone and mail-based debt collection activities, LVNV is a frequent litigant in Wisconsin courts. A general search on Wisconsin Circuit Court Access ("CCAP") for "LVNV*" returns the error message: "Your request could not be processed. Your search has returned more than 5000 rows. Please try again."

18. CCAP shows that LVNV *filed* more than 300 civil and small claims actions in Wisconsin in April 2018 alone. Upon information and belief, virtually all or actually all of those cases are collection actions against Wisconsin consumers.

19. LVNV uses both ordinary collection methods such as mail and telephone communications, and also civil lawsuits, in its collection business.

20. LVNV is a "debt collector" as defined in 15 U.S.C. § 1692a.

21. A company meeting the definition of a "debt collector" (here, LVNV) is vicariously liable for the actions of a second company (here, TrueAccord) collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf) (*citing Pollice*, 225 F.3d at 404-05).

## FACTS

22. On or about April 11, 2018, HFS mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to LVNV and originally owed to "US BANK NA D/B/A ELAN FINANCIAL SERVICES" ("Elan"). A copy of this letter is attached to this complaint as Exhibit A.

23. Upon information and belief, the alleged debt that HFS was attempting to collect was a credit card account, used only for personal, family, or household purposes.

24. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

25. Upon information and belief, Exhibit A is a form debt collection letter used by HFS to attempt to collect alleged debts.

26. Upon information and belief, Exhibit A is the first written communication that HFS sent to Plaintiff regarding the alleged debt to which Exhibit A refers.

27. Exhibit A contains the following:

> This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request from this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different than the current creditor.

Exhibit A.

28. The above language in Exhibit A is the debt validation notice that the FDCPA requires the debt collector mail the consumer along with, or within five days of, the initial written communication.

29. The purpose of the debt validation notice is to disclose the consumer's statutory rights to dispute the debt and request the name and address of the original creditor.

5

30. If Exhibit A was actually mailed on April 11, 2018, it would have been received on or after April 14, 2018.

31. If Exhibit A was received on April 14, 2018, the consumer would have until May 14, 2018 to mail out a request for validation. *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 519 (7th Cir. 1997) (consumer triggers verification rights by mailing out written notice of dispute on thirtieth day after receiving validation notice).

32. Exhibit A also contains the following settlement offers

> YOU DO HAVE OPTIONS!
> 1) During these difficult economic times, we are willing to extend a compromise offer of $4,673.61 to resolve this debt. That's a savings of $2,002.97!
> 2) If you cannot take advantage of the above offer, we are prepared to resolve the debt by offering you a compromise of $6,008.92 in three equal payments of $2,002.97, for three consecutive months. That's a savings of $667.66!
>
> This office is not obligated to renew these offers after 5/14/2018. Please call us at 855-221-9737 ext 701 to secure either one of these payment arrangements.

Exhibit A.

33. Each of the above offers requires that the consumer accept the offer by May 14, 2018. Exhibit A.

34. Any consumer, unsure whether a payment received after May 14, 2018 would actually settle the debt, would feel compelled to allow for an extra two or three days for mailing and HFS processing to ensure they were able to take advantage of the settlement offers in Exhibit A and that the payment would not be processed as a partial payment on the full balance.

35. Thus, any consumer who wished to take advantage of the settlement offers in Exhibit A would feel compelled to mail out payment on or before May 11, 2018, at the latest.

36. The 30-day validation period identified in Exhibit A would end after the consumer would feel compelled to mail out a payment to take advantage of the settlement offers in Exhibit A before they expire. *See* 15 U.S.C. § 1692g(a).

6

37. Assuming the consumer sought verification at or near the end of the statutorily mandated 30-day validation period, there would be no way for HFS to provide verification in time for the consumer to tender payment in acceptance.

38. The original creditor in this case has assigned the debt to HFS, a third-party debt buyer.

39. Third-party debt buyers are notorious for attempting to collect on debts that are outside the statute of limitations or otherwise cannot be verified. For example, the State of Minnesota Attorney General webpage on third-party debt buyers contains the following:

### What Makes Debt Buyers Different?

> There are several facts that make debt buyers somewhat different than original creditors in their collection efforts.
>
> First, when purchasing a portfolio of old debt, a debt buyer generally only purchases an electronic file of information that contains basic information about the debts, such as the names of supposed debtors and the amounts owed. The debt buyer usually does not purchase any documents or other evidence that shows that individual citizens owe the money, such as account statements or charge slips. These electronic files are often rife with errors. For example, some citizens report that an original creditor sold debt that the citizen paid off years ago.
>
> Second, the debt that is purchased is often very old. This debt is often called "zombie debt" because it is so old. Some citizens report being pursued for collection efforts by a debt buyer for debt that originated ten or more years ago. To make matters worse, debt buyers often take the position that they will continue to pursue an individual citizen for payment of a debt unless and until the person can prove they don't owe the money. Many people, however, don't keep cancelled checks, account statements, or other proof of payment that goes back that far and therefore have a hard time coming up with the proof that they paid the bill. Further, individuals are often unfairly stuck attempting to prove a negative (i.e., that they don't owe money), when under the law a collector is not supposed to pursue a citizen for payment of a bill unless the collector has substantiation that it is owed.

7

> Third, debt buyers are often particularly aggressive in their collection attempts. They cast a wide net to find people who may owe money, and they often pursue the wrong people. Debt buyers often run assembly line-like "mills" and quickly turn to courts and lawsuits to collect money. It is routine for debt buyers to continue to hound individuals for debt after such individuals have stated that the debt is not owing. Since it is costly or impossible for debt buyers to verify a debt, they often do not do so, but instead continue with their collection efforts. Some individuals pay debts they do not owe just to get debt buyers to stop calling, or to ensure that the debt does not wrongfully end up on their credit report. Because the debt buyer has no relationship to maintain with the consumer, debt buyers may be particularly aggressive and unprofessional in their dealings with individuals.

https://www.ag.state.mn.us/consumer/publications/debtbuyers.asp (accessed May 22, 2018); *see also, e.g., Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443, 446 (6th Cir. 2014) ("Debt buyers now pay billions of dollars to purchase tens of billions of dollars of consumer debt each year, most of it charged-off credit card debt like Stratton's. Debt buyers usually purchase bad debts in bulk portfolios, often in the form of a spreadsheet, and rarely obtain the underlying documents relating to the debt.") (citing Fed. Trade Comm'n, *The Structure and Practices of the Debt Buying Industry* at ii-iii).

40. The unsophisticated consumer, not having dealt with LVNV directly, might be confused as to whether LVNV actually owned the debt or whether LVNV could attempt to collect on a debt that may have charged off years before HFS mailed its letter. In fact, this is one of the primary purposes of the consumer's statutory dispute rights. *See, e.g.,* 15 U.S.C. §§ 1692g(a)(5) and 1692g(b) (addressing circumstances under which the current creditor is different from the original creditor).

41. The unsophisticated consumer, having dealt directly with the original creditor, might assume that the underlying debt was valid as long as LVNV actually owned the debt and could attempt to collect it, in which case she would want to accept the settlement offer.

8

42. The unsophisticated consumer, realizing that the debt could not be verified before the settlement offer in Exhibit A expired, would be unsure how, or whether, she could seek verification of the debt but accept the settlement offer if the debt could be verified.

43. Exhibit A does not explain how, or even whether, a consumer may request verification of the debt and accept the settlement offer if the debt is verified.

44. The unsophisticated consumer, not interested in paying LVNV unless it could actually attempt to collect the debt but wishing to take advantage of the settlement offer if the debt is legitimate, would not know whether foregoing her dispute rights was a material term of the settlement offer.

45. The unsophisticated consumer would also not know whether or how she could receive her money back from Defendants if Defendants are unable to verify the debt or if the debt actually is not valid.

46. In fact, though the unsophisticated consumer would not realize it, the debt collector need not even verify the debt as long as it ceases further attempts to collect the debt. *See Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) (holding that the debt collector may cease communication rather than provide verification).

47. Thus, the purpose and effect of providing a settlement offer with a letter containing the validation notice is to confuse the consumer as to whether she can require the debt collector validate the debt.

48. Exhibit A is confusing to the unsophisticated consumer because it requires the debt collector to make a payment during the validation period, but does not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains

9

the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

49. Because the settlement offer in Exhibit A expires before the validation period ends, there is an apparent contradiction between the settlement offer and the validation notice.

50. The unsophisticated consumer would be confused about whether the settlement offer in Exhibit A would require her to forego her rights to validate the debt.

51. The plain language of Exhibit A is unclear as to how HFS would proceed in the event that the consumer mailed a dispute along with a payment that was intended to accept the settlement offer in the case that the debt could be verified.

52. Where a consumer mailed a dispute along with a payment that was intended to accept a settlement offer in Exhibit A, under the terms of Exhibit A, HFS might:

   a. Hold the payment in escrow pending verification of the debt;

   b. Interpret the payment as an accord and satisfaction and settlement in full that contractually bars the consumer from requesting verification of the debt; or

   c. Send the payment back to the consumer pending verification of the debt, in which case the consumer may no longer be able to settle the debt because the offer would have expired while the debt collector was obtaining verification.

53. Where a consumer mailed a dispute along with a payment that was intended to accept a settlement offer with an impending expiration date, whether the FDCPA requires a debt collector to proceed along any of the above paths is an open question in the Seventh Circuit. *See Bailey v. TRW Receivables Management Services, Inc.*, 1990 U.S. Dist. LEXIS 19638, *7-8 (D. Haw. Aug. 16, 1990) ("There is nothing in the statute which indicates that a debt collector is not required to provide verification where a consumer requests it after paying the debt.").

54. Whether accepting payment, or even holding payment pending verification, is a "further attempt to collect the debt" is an open question in the Seventh Circuit but at least one

10

District Court outside the Seventh Circuit has held that it is. *Compare Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234, 1243 (D. Haw. Feb. 5, 2002) ("Because the debt collector in *Bailey* had already collected the debt, there was no collection to 'cease' pending validation. In *Bailey*, keeping the consumer's money was tantamount to continuing collection activity.").

55. However, two district courts within the Seventh Circuit have held that "[n]othing in the FDCPA suggests that a debt collector cannot give a consumer an incentive to simply settle the case rather than dispute that the debt is valid." *Betz v. MRS BPO, LLC*, 2017 U.S. Dist. LEXIS 63236, at *15 (E.D. Wis. Apr. 26, 2017); *see also, Hennings v. Alltran Fin., LP*, 2017 U.S. Dist. LEXIS 81289, at *9 (E.D. Wis. May 26, 2017) (quoting *Betz*, 2017 U.S. Dist. LEXIS 63236, at *4).

56. The issue in this case, however, is not whether a debt collector may offer the consumer the opportunity to "bargain" away her right to dispute the debt, it is whether the consumer would know whether or not the offer *actually requires her to do so*.

57. <u>Exhibit A</u> does not explain whether the consumer may seek verification of the debt and accept one of the settlement proposals offered in <u>Exhibit A</u>. *Compare* <u>Exhibit A</u> *with Hennings*, 2017 U.S. Dist. LEXIS 81289, at *12 ("I would further note that the letter clearly states that the 'opportunities listed above do not alter or amend your validation rights as contained in this document.").

58. Defendant did not include any explanatory language in <u>Exhibit A</u>, *see, e.g., Bartlett v. Heibl*, 128 F.3d 497, 501-02 (7th Cir. 1997); *Hennings*, 2017 U.S. Dist. LEXIS 81289, at *11..

59. In order to preserve the settlement offer in the event of a written dispute, and to preserve the 30-day validation period itself, the debt collector should include explanatory

11

language that makes clear whether the consumer may both seek verification and take advantage of the settlement offer, and if so, how she may do so.

60. The unsophisticated consumer would be confused as to whether she would effectively exercise her validation rights by sending a payment along with a dispute letter.

61. The unsophisticated consumer would be confused as to whether she would effectively satisfy the debt by sending a payment along with a dispute letter.

62. The unsophisticated consumer would be confused as to whether a validation request would reject the settlement offers proposed in Exhibit A.

63. Moreover, Option (2) in Exhibit A states:

> 2) If you cannot take advantage of the above offer, we are prepared to resolve the debt by offering you a compromise of $6,008.92 in three equal payments of $2,002.97, for three consecutive months. That's a savings of $667.66!

Exhibit A.

64. A consumer making three payments of $2,002.97 would pay a total of $6,008.91, not $6,008.92.

65. The unsophisticated consumer could make three payments of $2,002.97 and would not know whether she had sent enough money to actually settle the account, due to the possibility that HFS, or LVNV, actually required the consumer pay a total of $6,008.92 to settle the account.

66. The consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt. A payment of the entire debt would leave pennies or, at most, a few dollars left over for payment later. *See eg. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000).

67. Because the offer contains a false and confusing payment schedule, the payments specified in Option (2) in Exhibit A may be insufficient to settle the whole debt. Due to the terms

of Option (2), it is possible that HFS, or LVNV, could continue to collect the entire remaining balance of the alleged debt – almost $700.00 – plus additional interest, as a settlement has not actually been consummated.

68. Moreover, Exhibit A contains the following:

> Please see additional pages for required notices.

Exhibit A.

69. There were no additional pages sent along with the one-page letter in Exhibit A.

70. The unsophisticated consumer would be confused as misled as to whether there were additional "required notices" that should have been conveyed.

71. Exhibit A is misleading and confusing to the unsophisticated consumer who would not understand why she was being referred to additional pages that were not actually mailed along with the letter. *See, e.g., Papetti v. Rawlings Fin. Servs., LLC*, 121 F. Supp. 3d 340, 352 (S.D.N.Y. Aug. 5, 2015) ("Even the least sophisticated consumer must read collection notices with some care. But, assuming that the least sophisticated consumer exercised such are, he would notice that the debt collector in this case had not. He would notice an error—a blank page where he was supposed to find 'important information.' And he would likely be left uncertain whether he indeed possessed whatever the 'important information' was.").

72. The unsophisticated consumer, upon receiving Exhibit A, would feel compelled to call the debt collector to ask about the "required notices," allowing the debt collector to use high pressure tactics to induce the consumer into tendering payments on the debt, whether or not it was in the consumer's best interests to do so. *See, DeGeorge v. Fin. Recovery Servs.*, 2012 U.S. Dist. LEXIS 140966, at *25 (E.D. Penn. Sept. 27, 2012) (plaintiff stated claim that defendant engaged in unfair debt collection practices that "required plaintiff to contact defendant to take

13

advantage of a discount, thereby exposing plaintiff to additional pressures of in-person communication.").

73. Plaintiff was confused and misled by Exhibit A.

74. The unsophisticated consumer would be confused and misled by Exhibit A.

75. Plaintiff had to spend time and money investigating Exhibit A and the consequences of any potential responses to Exhibit A.

76. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

### *The FDCPA*

77. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp. Solutions*, 2018 U.S. Dist. LEXIS 50016, *12, 2018 WL 1513043 (E.D. Wis. March 27, 2018); *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly

influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

78. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

15

79. 15 U.S.C. § 1692e generally prohibits the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt."

80. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

81. 15 U.S.C. § 1692e(10) specifically prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

82. 15 U.S.C. § 1692f generally prohibits the "use [of] unfair or unconscionable means to collect or attempt to collect any debt."

83. 15 U.S.C. § 1692g(b) states, in part:

(b) **Disputed debts**
…
Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

## COUNT I – FDCPA

84. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

85. The expiration dates listed for the settlement offers in Exhibit A conflict with and overshadow the debt validation notice, in that Exhibit A does not explain how the debt collector would proceed if the consumer attempted to request verification of the debt and accept the settlement offer if the debt could be verified. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

86. The expiration dates listed for the settlement offers in Exhibit A conflict with and overshadow the debt validation notice, in that the settlement offers require the consumer to tender payment during the validation period or shortly thereafter, but do not explain how the

16

validation notice and settlement "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

87. Exhibit A is confusing, deceptive, and/or misleading to the unsophisticated consumer.

88. Defendants violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, and 1692g(b).

## COUNT II – FDCPA

89. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

90. The Option (2) settlement offer in Exhibit A is false, deceptive, misleading, and confusing to the unsophisticated consumer. Option (2) states that the consumer may resolve the debt for $6,008.92 but provides an installment payment schedule that adds up to payments of only $6,008.91.

91. The Option (1) and Option (2) settlement offers in Exhibit A are both false, deceptive, misleading, and confusing to the unsophisticated consumer because the unsophisticated consumer would not know whether she was required to forego her validation rights in order to avail herself of the settlement offers.

92. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692g(b).

## COUNT III – FDCPA

93. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

94. <u>Exhibit A</u> is false, deceptive, misleading, and confusing to the unsophisticated consumer because it references "required notices" on "additional pages" but was not sent alongside any additional pages.

95. The unsophisticated consumer would be confused and misled about whether Defendants were supposed to be providing her with additional information that was not provided. *See Papetti*, 121 F. Supp. 3d at 353-54.

96. Defendants violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692f.

## CLASS ALLEGATIONS

97. Plaintiffs bring this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) where the letter was mailed between June 1, 2017 and June 1, 2018, inclusive, (e) and was not returned by the postal service.

98. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

99. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with the FDCPA.

100. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

101. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

18

102. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

103. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: June 1, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com